UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/26/16

------------------------------------------------------- X

STAGG P.C.,

          Plaintiff,

     - against -

U.S. DEPARTMENT OF STATE,
DIRECTORATE OF DEFENSE TRADE
CONTROLS, and JOHN F. KERRY, in his
official capacity as Secretary of State,

         Defendants.

**OPINION AND ORDER**

**15-cv-8468 (SAS)**

------------------------------------------------------- X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

        Stagg P.C., a law firm located in Washington D.C., brings this motion

against the U.S. Department of State, its Secretary, and its subordinate agency, the

Directorate of Defense Trade Controls (the "DDTC") seeking a preliminary

injunction enjoining the application of certain provisions of the Arms Export

Control Act ("AECA") and the International Traffic in Arms Regulations

("ITAR") that plaintiff asserts violate the First and Fifth Amendments to the

United States Constitution and the Administrative Procedure Act ("APA"). For the

following reasons, plaintiff's motion is DENIED.

**I.    BACKGROUND**

A.      **The AECA and Its Regulatory Framework**

The AECA authorizes the President of the United States to control the export of defense articles and defense services.[1]  The ITAR are the implementing regulations of the AECA.[2]  The AECA includes the U.S. Munitions List ("USML"), the list of items designated as defense articles and services,[3] and authorizes the President to designate items for inclusion on the USML, require licenses for the export of USML items, and promulgate regulations for the import and export of such items.[4]  The President delegates his authority under the AECA to the Secretary of State, and this authority is further delegated to the DDTC.[5]

The USML lists "defense articles and defense services" ranging from firearms to nuclear weapons, and also includes related "technical data" "required for the design, development, production, manufacture, assembly, operation, repair, testing, maintenance or modification of defense articles," including "blueprints, drawings, photographs, plans, instructions or documentation."[6]  The ITAR exclude

---

[1]      *See* 22 U.S.C. § 2778(a)(1).

[2]      *See* 22 C.F.R. §§ 120-130.

[3]      *See* 22 U.S.C. § 2278(a)(1).

[4]      *See id.* § 2278(h).

[5]      *See* 22 C.F.R. § 120.1(a).

[6]      *Id.* § 120.10(a)(1).

from the definition of "technical data" (1) "information concerning general scientific, mathematical or engineering principles commonly taught in schools, colleges, and universities," (2) "basic marketing information on function or purpose or general system descriptions of defense articles," and (3) "information in the public domain."[7]  "Public domain" is defined, *inter alia*, to include "information which is published and which is generally accessible or available to the public."[8]

Where there is doubt as to whether an item or service is covered by the USML, the ITAR provide a "commodity jurisdiction" procedure, pursuant to which the DDTC will determine whether an article or service is within the ITAR's scope.[9]  The DDTC also provides informal guidance and advisory opinions on the ITAR and their application.[10]  While the DDTC is considering a commodity jurisdiction request, the DDTC advises individuals to abstain from exporting or transmitting the item in question without proper registration and approval.  The regulations include a ten day deadline for providing a preliminary response, as well

---

[7]     *Id.* § 120.10(a)(5).

[8]     *Id.* § 120.11(a).

[9]     *See id.* § 120.4.

[10]    *See id.* § 126.9(a).

as a provision for requesting expedited processing.[11]  The DDTC is required to

"complete the review and adjudication of license applications within 60 days of

receipt, except in cases where national security exceptions apply."[12]  These

exceptions are relatively narrow: When Congressional notification is required

(generally for sales of major defense equipment), when required assurances from

other governmental entities, such as those overseeing missile technology and

cluster munitions, have not been received, and when other certain administrative

procedures are in-process but have not been completed.[13]

      Any person who discloses or transfers technical data protected by the

ITAR must be licensed or otherwise obtain approval from the DDTC prior to any

disclosure or transfer.[14]  The ITAR prohibit judicial review of licensing and other

approval determinations.[15]  A willful export of defense articles (including related

technical data) without a license is a criminal violation.[16]  Civil penalties can be

---

[11]    *See id.* § 120.4(e).

[12]    74 Fed. Reg. 63,497 (Dec. 3, 2009).

[13]    *See id.*

[14]    *See* 22 U.S.C. § 2778(b)(2).

[15]    *See* 22 C.F.R. § 128.1.

[16]    *See* 22 U.S.C. § 2778(c); 22 C.F.R. § 127.1(a).

imposed for both willful and non-willful unlicensed exports.[17]

### B.    Previous Prior Restraint Under the ITAR

Before January 1, 1985, the ITAR contained a prior restraint on

releasing technical data into the public domain.  The prior restraint read:

> The burden for obtaining appropriate U.S. Government
> approval for the publication of technical data falling within
> the definition in § 125.01, including such data as may be
> developed under other than U.S. Government contracts, is
> on the person or company seeking publication.[18]

The DDTC published a final rule on December 6, 1984 that repealed

this prior restraint effective January 1, 1985, noting that "[c]oncerns were

expressed . . . on licensing requirements as they relate to the First Amendment of

the Constitution.  The revision seeks to reflect these concerns, and certain new

exemptions are provided."[19]  These concerns had been expressed by the

Department of Justice and U.S. House of Representatives, both of which

considered the prior restraint to be unconstitutional.[20]  This was the last revision to

---

[17]    *See* 22 U.S.C. § 2778(e); 22 C.F.R. § 127.10.

[18]    22 C.F.R. § 125.11 n.3 (1984).

[19]    49 Fed. Reg. 47,682 (Dec. 6, 1984).

[20]    *See* Office of Legal Counsel, U.S. Department of Justice,
*Constitutionality Under the First Amendment of ITAR Restrictions on Public
Cryptography* (May 11, 1978); H.R. Rep. No. 96-1540, at 188-19 (1980).

the ITAR concerning a prior restraint on releasing technical data into the public

domain until June 3, 2015.

### C.   Recent Developments Leading to This Action

On June 3, 2015, defendants published a proposed rule for notice and

comment that sought, in relevant part, to revise the definition of "public domain"

to provide a "more explicit statement of the ITAR's requirement that one must

seek and receive a license or other authorization from the Department . . . to release

ITAR controlled 'technical data.'"[21] Also proposed is a new provision stating that

re-dissemination of "technical data" made available to the public without

authorization "is a violation of the ITAR if, and only if, it is done with knowledge

that the 'technical data' . . . was made publicly available without an authorization .

. . ."[22]  The DDTC accepted comments on these proposed revisions to the ITAR

from June 3, 2015 to August 3, 2015.[23]  It received approximately 12,787

comments, including a comment from Stagg P.C., and is in the process of

reviewing and incorporating them into the next iteration of the revised regulations

---

[21]     80 Fed. Reg. 31,528.

[22]     *Id.*

[23]     *See* Defendants' Memorandum of Law in Opposition to Plaintiff's
Motion for a Preliminary Injunction ("Def. Mem.") at 6.

and preamble.[24]

Stagg P.C. is a law firm headquartered in Washington, D.C.  It, by and through its representatives, wishes to give a presentation at a public event hosted by the New York City Bar Association ("NYCBA") on February 9, 2016.[25]  This presentation will include slides that, according to Stagg P.C., include information available in the public domain but not approved for release into the public domain under the proposed rule disseminated by the DDTC.[26]  Stagg P.C. describes this aggregation as the "private generation of unclassified information."[27]

Because the preamble to the DDTC's proposed rule declares that the proposed redefinition of "public domain" "[is] a more explicit statement of the ITAR's requirement that one must seek and receive a license or other

---

[24]    *See* 12/7/15 Declaration of Brian H. Nilsson, Deputy Assistant Secretary of State for Defense Trade Controls, Ex. A to Def. Mem. ("Nilsson Dec.") ¶ 15.

[25]    *See* 12/3/15 Declaration of Christopher Stagg in Support of Plaintiff's Motion for a Preliminary Injunction ("Stagg Dec.") ¶ 13.  No such event currently appears on the NYCBA's calendar of events.  *See* Event Calendar, New York City Bar Association, http://services.nycbar.org/Members/Event_Calendar/Members /Event_Calendar.aspx?.

[26]    *See* Stagg Dec. ¶ 13.

[27]    *See* Proposed Order, Ex. 1 to Plaintiff's Memorandum of Law in Support of Motion for a Preliminary Injunction ("Pl. Mem.") at 1.

authorization"[28] before releasing ITAR-controlled technical data into the public domain, Stagg P.C. argues it is currently subject to a prior restraint on its speech.[29] Stagg P.C. does not identify the materials in question despite both this Court's and the Government's request (depriving the DDTC of the opportunity to end this controversy by confirming its suspicion[30] that the materials Stagg P.C. wishes to present are not covered by the AECA and ITAR). Rather, Stagg P.C. has chosen to move for a preliminary injunction enjoining the enforcement of *any* licensing or approval requirement for releasing privately generated unclassified information into the public domain.[31]

## II.   LEGAL STANDARD

"'A preliminary injunction is an extraordinary remedy never awarded as of right.'"[32] "A party seeking a preliminary injunction must generally show a

---

[28]      80 Fed. Reg. 31,528 (June 3, 2015).

[29]      *See* Pl. Mem. at 7-8.

[30]      *See* Nilsson Dec. ¶¶ 17-19.

[31]      Stagg P.C. has not, to the DDTC's knowledge, availed itself of the administrative process for obtaining permission to release technical data described above, and has chosen instead to proceed directly to federal court. *See* Nilsson Dec. ¶ 16.

[32]      *UBS Fin. Servs., Inc. v. West Virginia Univ. Hosps., Inc.*, 660 F.3d 643, 648 (2d Cir. 2011) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)).

likelihood of success on the merits, a likelihood of irreparable harm in the absence of preliminary relief, that the balance of equities tips in the party's favor, and that an injunction is in the public interest."[33]

In the case of a prohibitory injunction, the Second Circuit allows a party seeking a preliminary injunction to show "'either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.'"[34]  However, "'when . . . the moving party seeks a preliminary injunction that will affect government action taken in the public interest pursuant to a statutory or regulatory scheme, the injunction should be granted only if the moving party meets [a] more rigorous likelihood-of-success standard.'"[35]  That is, plaintiff "'must establish a clear or substantial likelihood of

---

[33]    *American Civil Liberties Union v. Clapper*, 804 F.3d 617, 622 (2d Cir. 2015) (citing *Winter*, 555 U.S. at 20); *Amoco Production Co. v. Gambell*, 480 U.S. 531, 542 (1987); *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 311-12 (1982)). *See also* Fed. R. Civ. P. 65(a) (preliminary injunctions).

[34]    *Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010) (quoting *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979)).

[35]    *Sussman v. Crawford*, 488 F.3d 136, 140 (2d Cir. 2007) (quoting *Wright v. Giuliani*, 230 F.3d 543, 547 (2d Cir. 2000)).

success on the merits.'"[36]

## III.   DISCUSSION

### A.   Standing

Plaintiff has declined to provide much of the detail that would assist both its adversary and this Court in weighing the merits of its claim.  It has not provided the technical data it alleges violate the AECA and ITAR.  Nor has it provided the materials aggregating this technical data.  It has not even provided detail on the conference it allegedly intends to speak at in February.  This Court is left with little more than a hypothetical problem in search of a solution.[37]  That said, the vagueness in Stagg P.C.'s pleading — however frustrating — is insufficient to deprive it of standing under the lenient standing requirements in prior restraint cases.  "When a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially without first applying for, or

--------

[36]    *Id.* (quoting *Tunick v. Safir*, 209 F.3d 67, 70 (2d Cir. 2000)).

[37]    The proposed amendment to the ITAR giving rise to this claim is also just that — *proposed* — and the DDTC is in the midst of responding to and incorporating the 12,000 comments it received in its previous round of notice and comment into a revised preamble and set of regulations.  The DDTC may well reword or even withdraw the preamble and amended regulation in response to the public comments it has received, and obviate the need for this lawsuit.  The issue of the incomplete nature of the DDTC's administrative action will be addressed in deciding defendants' partial motion to dismiss.

being denied, a license."[38]

Here, the facts articulated in Stagg P.C.'s complaint and the supporting affidavit of Christopher Stagg, while somewhat opaque, are sufficiently particular to establish standing under this standard. Stagg P.C. alleges that it possesses certain technical data, available in — but unauthorized for release into — the public domain, that it wants to aggregate into a set of materials for presentation to an audience on February 9, 2016. Stagg P.C. alleges that this activity requires prior approval from the DDTC under the AECA and ITAR. Stagg P.C. alleges that the DDTC's licensing requirement, which covers such technical data, grants the DDTC unbridled (and unreviewable) discretion to approve or deny the release of said technical data to the public. Stagg P.C. therefore has standing to bring this facial challenge to the statute and regulations in question.

## B.    Qualification for Injunctive Relief

Plaintiff has the burden of demonstrating each of the four prerequisites for the granting of a preliminary injunction: irreparable harm, a likelihood of success on the merits, that the balance of equities tips in its favor, and that an injunction is in the public interest.[39] Plaintiff seeks to enjoin government

---

[38]    *Susan B. Anthony List v. Driehaus*, 134 S.Ct. 2334, 2341 (2014).

[39]    *See Winter*, 555 U.S. at 20 (citing *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008)).

action taken in the public interest pursuant to the statutory and regulatory scheme set out in the AECA and ITAR, and therefore must meet a higher burden — a substantial likelihood of success on the merits — as to the second prong.

Plaintiff has demonstrated irreparable harm. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."[40] Plaintiff also raises several arguments regarding its likelihood of success on the merits that the Government would be wise to note. I also recognize the Second Circuit's recent determination, in the context of campaign finance restrictions, that "[c]onsideration of the merits is virtually indispensable in the First Amendment context, where the likelihood of success on the merits is the dominant, if not dispositive factor."[41] In this case, however, that determination must be considered together with the Second Circuit's (and the Supreme Court's) designation of national security as a "public interest of the highest order,"[42] and the Supreme Court's admonition to district courts to consider

---

[40]    *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

[41]    *New York Progress and Protection PAC v. Walsh*, 733 F.3d 483, 488 (2d Cir. 2013).

[42]    *Clapper*, 785 F.3d at 826. *Accord Holder v. Humanitarian Law Project*, 561 U.S. 1, 28 (2010) ("Everyone agrees that the Government's interest in combating terrorism is an urgent objective of the highest order.").

carefully an injunction's adverse impact on the public interest in national defense.[43]

Indeed, even in a case where "appellants [showed] a likelihood — *indeed, a certainty* — of success on the merits" of certain claims, the Second Circuit found that "[i]n light of the asserted national security interests at stake, we deem it prudent" to deny a preliminary injunction suspending a metadata collection program intruding on citizens' rights to privacy.[44]  Even assuming for the purposes of this motion that Stagg P.C. has shown a substantial likelihood of success on the merits of its First and Fifth Amendment and APA claims, the balance of the equities and the public interest both require the denial of this preliminary injunction.[45]

        Stagg P.C. does not seek an injunction cabined to its contemplated republication of protected technical data at a bar association event in February; rather, it seeks an expansive injunction barring the enforcement of "any licensing or other approval requirements for putting privately generated unclassified

---

[43]     *See Winter*, 555 U.S. at 24-25.

[44]     *Clapper*, 733 F.3d at 825-26 (emphasis added).  The program in question was being reviewed for renewal by Congress at the time the motion for a preliminary injunction was brought — just as the ITAR's definition of "public domain" is currently being reviewed by the DDTC.

[45]     By this decision, I express no opinion on the final disposition of Stagg P.C.'s case.  It may be that, after the development of a full factual record, permanent injunctive relief will be warranted.

[technical] information into the public domain" under the relevant sections of the ITAR.[46]  This would enjoin the application of the ITAR's approval mechanism not only to situations where an individual or organization wishes to republish previously disclosed technical data, but to all situations where individuals wished to disclose technical data generately privately but covered by the ITAR.[47]

Granting this injunction would have very serious adverse impacts on the national security of the United States.  The "privately generated unclassified information" described by Stagg P.C. in this case is a slideshow containing examples of technical data covered by ITAR, not approved for public release, but still available in the public domain.  This Court is left to speculate as to the specific technical data that may be in Stagg P.C.'s possession, but can in fact identify other technical data that might be freely republished if Stagg P.C.'s injunction was granted.  Examples include: digital plans for 3D-printable plastic firearms,

---

[46]    *See* Proposed Order, Ex. 1 to Pl. Mem., at 1.

[47]    A more limited injunction applicable only to Stagg P.C.'s aggregation of previously published technical data would also fail.  Without any details as to the nature or content of the technical data Stagg P.C. wishes to disclose, I have no choice but to assume the worst case scenario — e.g. technical data regarding highly sensitive defense systems published by an unauthorized source, repackaged by Stagg P.C. for purposes of its speeches.  For the same reasons described below, such an injunction would be contrary to the public interest.  Moreover, the balance of the equities weighs heavily in favor of the Government, and its interest in maintaining national security.

undetectable by metal detectors and untraceable without registration and serial

number,[48] privately generated technical data for delivery systems for weapons of

mass destruction, such as rockets and missiles, created by defense contractors,[49]

and technical data related to chemical and biological agents that could be adapted

for use as weapons.[50]  This parade of horribles is not an idle fancy.  Indeed, without

the licensing and approval mechanisms set forth in the AECA and ITAR, *any*

unclassified technical data leaked to the Internet would be fair game to republish in

any forum without regard to consequences — and in an era where national security

information has been successfully leaked,[51] this is not a specious threat.  The

balance of the equities and the public interest both firmly weigh in favor of the

Government, and against the plaintiff.  Because Stagg P.C. has not met its burden

of showing either that the balance of equities tips in its favor or that an injunction

is in the public interest, its request for a preliminary injunction is DENIED.

---

[48]    *See* Nilsson Decl. ¶ 24.

[49]    *See id.* ¶¶ 21-23.

[50]    *See id.* ¶ 21.

[51]    *See, e.g.,* Barton Gellman et al., *Edward Snowden Comes Forward As Source of NSA Leaks*, Washington Post, June 9, 2013, *available at* https://www.washingtonpost.com/politics/intelligence-leaders-push-back-on-leakers-media/2013/06/09/fff80160-d122-11e2-a73e-826d299ff459_story.html; Charlie Savage & Emmarie Huetteman, *Manning Sentenced to 35 Years for a Pivotal Leak of U.S. Files*, N.Y. Times, Aug. 21, 2013, at A1.

## IV.    CONCLUSION

For the foregoing reasons, plaintiff's motion for a preliminary injunction is DENIED.  The Clerk of the Court is directed to close this motion (Dkt. No. 15).  A conference is scheduled for February 10, 2016 at 4:00 p.m.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            January 26, 2016

-16-

**–Appearances–**

**For Plaintiff:**

Christopher Stagg, Esq.
Stagg P.C.
521 Fifth Avenue, 17th Floor
New York, NY 10175
(212) 518-4854

**For Defendants:**

Dominika N. Tarczynska
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, NY 10007
(212) 637-2748