UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STAGG P.C., | |
| Plaintiff, | |
| -v.- | 15 Civ. 8468 (KPF) |
| U.S. DEPARTMENT OF STATE; DIRECTORATE OF DEFENSE TRADE CONTROLS; and MIKE POMPEO (in his official capacity only as Secretary of State), | **OPINION AND ORDER** |
| Defendants. | |

KATHERINE POLK FAILLA, District Judge:

The Court is in receipt of Plaintiff's motion for reconsideration and opening brief ("Pl. Recon. Br." (Dkt. #92)), Defendants' opposition papers (Dkt. #99), and Plaintiff's reply submission ("Pl. Recon. Reply" (Dkt. #100)).  As explained below, Plaintiff's motion raises no legal or factual matters that alter the conclusions reached by the Court in its January 30, 2019 Opinion and Order (the "January 2019 Opinion" (Dkt. #89)).  *See Stagg P.C.* v. *U.S. Dep't of State; Directorate of Defense Trade Controls; and Mike Pompeo*, 354 F. Supp. 3d 448 (S.D.N.Y. 2019) ("*Stagg III*").  The Court therefore denies Plaintiff's motion.

## A.  Applicable Law

The Second Circuit has made clear that motions for reconsideration are to be denied except where "the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  *Shrader* v. *CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).  Compelling reasons for

granting a motion for reconsideration are limited to "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd.* v. *Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (internal quotation marks and citation omitted).  A motion for reconsideration is, of course, "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple[.]'" *Analytical Surveys, Inc.* v. *Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quoting *Sequa Corp.* v. *GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)); *see also Stone* v. *Theatrical Inv. Corp.*, 80 F. Supp. 3d 505, 506 (S.D.N.Y. 2015) (observing that a motion for reconsideration "is neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have been previously advanced" (internal quotations and citations omitted)).

**B.     Discussion**

Plaintiff raises a number of arguments, none of which provides a valid basis for the Court to alter its prior ruling.  The Court addresses them in turn in the remainder of this Opinion.

### 1.     Plaintiff's Arguments Seeking Declaratory Relief as to the Government's Prior Interpretation of the ITAR Are Improper

To begin, Plaintiff notes that the Court's construction of the ITAR's regulatory text differed from the Department's pre-litigation view on the matter, and from Defendants' litigation position.  (*See* Pl. Recon. Br. 4-5 (observing that the Court's holding "contradicts the Government's arguments")).  Proceeding

from that premise, Plaintiff urges the Court to extend its ruling to "acknowledge" that "the government's prior enforcement and/or threatened enforcement violated Plaintiff's constitutional rights[.]" (*Id.*). Indeed, Plaintiff asserts that this is "the exact declaratory relief" it requested on page 13 of its First Amended Complaint (the "FAC"). (*Id.* at 5). The Court disagrees.

*First*, Plaintiff's motion for reconsideration mischaracterizes the FAC. On the issue of contemplated disseminations, Plaintiff recited in relevant part that

> Plaintiff seeks to disseminate materials that are already published and generally accessible public information ... available from bookstores and libraries, and that are in the public domain, but that were not authorized by the Defendants into the public domain. ... Plaintiff [seeks] to disseminate information that met the public domain exclusion within 22 C.F.R. § 120.11 because the information was published, generally accessible, and available to the public from bookstores or public libraries.

*Stagg III*, 354 F. Supp. 3d at 459 (internal citations and quotation marks omitted). "Moreover, Plaintiff also seeks to aggregate and modify the information that it plans to disseminate." *Id.* at 461 (internal citations and quotation marks omitted).

The FAC sought relief from a purported prior restraint on these intended disseminations that Plaintiff alleged was imposed by the ITAR. (*See generally* FAC). Page 13 of the FAC, to which Plaintiff now cites, states:

> WHEREFORE, Plaintiff respectfully requests judgment against Defendants, under all applicable causes of action, as follows:
>
> 1. A declaration that Defendants' prior restraint is facially invalid under the First Amendment to the United States Constitution;

2. A declaration that Defendants' prior restraint is invalid under the Fifth Amendment to the United States Constitution;

3. A declaration that Defendants' prior restraint is invalid under the Administrative Procedures Act;

4. An order temporarily, preliminarily, and permanently enjoining Defendants, their officers, agents, servants, and employees from enforcing the prior restraint on privately generated unclassified information;

5. Attorney fees and costs pursuant to 28 U.S.C. § 2412; and

6. Any other further relief as the Court deems just and appropriate.

(FAC 13). As it happened, this Court found that the purported prior restraint alleged in the FAC did not exist. *See Stagg III*, 354 F. Supp. 3d at 462-64 (holding that the ITAR does not disqualify information from the public domain exclusion either solely because the information entered the public domain without prior government authorization, or solely because the information has been aggregated or modified). Thus, the Court has already granted the relief that Plaintiff sought on page 13 of the FAC by construing the ITAR to clarify that Plaintiff never truly faced a prior restraint.

*Second*, to the extent that Plaintiff's motion for reconsideration seeks declaratory relief as to the merits of Defendants' pre-litigation and litigation positions regarding how to interpret certain provisions of the ITAR, the Court has already ruled that the positions were largely mistaken. *See Stagg III*, 354 F. Supp. 3d at 462-64. But to the extent that Plaintiff's motion for reconsideration seeks declaratory relief as to whether the mere fact that the

4

Department once held such views itself violated Plaintiff's constitutional rights, this Court and the Second Circuit have both previously explained that Plaintiff lacks standing to mount a facial constitutional challenge to an unenacted interpretation of the ITAR. In the words of the Second Circuit,

> [M]any of Stagg's arguments ... could be read as attacking not the existing regulatory scheme, but either a proposed regulation that was never adopted, or a prior regulation that Stagg claims was once in force but has since been repealed. Constitutional questions about regulations that no longer exist or that have been under consideration do not present cases or controversies within a court's Article III jurisdiction.

*Stagg P.C.* v. *Dep't of State*, 673 F. App'x 93, 95, n.1 (2d Cir. 2016) (summary order) ("*Stagg II*"). And in the words of this Court, "Plaintiff has no standing to mount a facial challenge to [a] proposed-but-not-enacted" interpretation of the ITAR. *See Stagg III*, 354 F. Supp. 3d at 643; *see also id.* at 461-62 ("Plaintiff has standing to challenge only the current ITAR.... [T]he Court will not consider any aspect of Plaintiff's briefing that purports to mount a facial challenge to text that has not been formally adopted into the ITAR.").

Plaintiff has not moved for reconsideration of the Court's ruling on standing. Therefore, to the extent that it now urges the Court to expound on the constitutionality of the Department's prior, mistaken views of the ITAR, Plaintiff improperly seeks to backdoor precisely those arguments as to which the Second Circuit and this Court have found it lacked standing. Such an argument violates the rule that a motion for reconsideration is not "an occasion for repeating old arguments previously rejected[.]" *Stone*, 80 F. Supp. 3d at 506.

5

*Third*, the Court disagrees that its prior holding was "tantamount to a decision that the Government's prior enforcement and/or threatened enforcement violated Plaintiff's constitutional rights[.]" (Pl. Recon. Br. 5). To the contrary, the Court clearly stated that it would "consider Plaintiff's facial challenge solely as it pertains to the current text of the ITAR's 'public domain' exclusion, and 'deemed export' provision." *Stagg III*, 354 F. Supp. 3d at 462. Therefore, the Court's prior holding applies solely to that text, as enacted in 22 C.F.R. §§ 120.11(a) and 120.17(a)(2). The Court made no ruling on the constitutionality *vel non* of the Department's prior enforcement or threatened enforcement actions.

Nor did Plaintiff's summary judgment briefing seek judgment based on the Department's prior enforcement or threatened enforcement actions. Indeed, such a claim would likely have required Plaintiff to plead facts and show evidence far beyond what Plaintiff provided for its facial challenge to the ITAR's text. Plaintiff instead sought summary judgment on the basis that "the ITAR *currently* imposes a prior restraint to use the public domain exclusion," arguing that "this Court should find this prior restraint on the public domain exclusion is facially unconstitutional." (Dkt. #63 at 3 (emphasis in original); *see also id.* at 7 ("This case presents a facial challenge and only pure questions of law that require no factual development. It presents a pure question of law because only the text of the regulations is required." (internal citations omitted))). Having obtained this Court's construction of the regulatory text, which construction has been largely favorable to Plaintiff, Plaintiff cannot now,

at the thirteenth hour, advance new claims regarding prior enforcement or threatened enforcement actions.  Such arguments violate the rule that a motion for reconsideration is not "an opportunity for making new arguments that could have been previously advanced."  *Stone*, 80 F. Supp. 3d at 506.

### 2.   Plaintiff's Arguments Seeking a Novel Ruling on the Meaning of the Term "Libraries" in the ITAR Are Improper

Similar reasoning compels rejection of Plaintiff's arguments urging the Court to develop a novel test to determine which Internet sources do and do not qualify as "libraries" for purposes of the ITAR's public domain exception. (*See* Pl. Recon. Br. 6-7; Pl. Recon. Reply 9-10).  To review, Plaintiff's motion for summary judgment sought a ruling on whether the ITAR's phrase "libraries open to the public" encompasses the entirety of the Internet or, alternately, whether that phrase does not include the Internet at all.  (*See* Dkt. #63 at 16-17; Dkt. #75 at 5).  Plaintiff asserted that the Department has "repeatedly represented that the Internet is covered by the public domain exclusion."  (Dkt. #63 at 17).  It then urged the Court to adopt a similar interpretation of the regulatory text, stating that "[t]he public domain exclusion includes public libraries, and it should be read in light of" Supreme Court precedent that Plaintiff characterized as "equat[ing] the Internet to a public library" and cautioning courts against minimizing First Amendment protections "for access to" Internet networks.  (*Id.*).  In its reply papers, Plaintiff argued that, "[t]o the extent the Government also claims that the public domain exclusion does not include the Internet, that issue itself is a legal question that must be resolved on the merits."  (Dkt. #75 at 5).  Plaintiff raised no further arguments

concerning the definition of the term "libraries" in the ITAR's public domain exclusion in its summary judgment briefing.

The Court resolved the two legal questions raised in Plaintiff's summary judgment briefing — whether the Internet is equivalent to a public library for purposes of the ITAR's public domain exclusion, and whether the definition of a public library for purposes of the public domain exclusion does not include the Internet — in the negative. *See Stagg III*, 354 F. Supp. 3d at 466 ("A 'library' is not limited to brick-and-mortar buildings with print collections, and may exist on the Internet with digital collections.... [The Court also] declines to construe the term 'library' in the ITAR to include the *entirety* of the Internet." (emphasis in original)). In short, the Court adopted a technologically-neutral interpretation of the regulatory text by holding that the meaning of the term "library" does not depend on the presence or absence of a particular technological medium, such as the Internet. *See id.* at 467-68 ("[F]or purposes of the ITAR's public domain exclusion, a library open to the public may exist on or off the Internet, but everything on the Internet does not qualify as a 'library' solely by virtue of its presence online."). Put somewhat differently, for purposes of determining whether information is sourced from a "librar[y] open to the public," the Court found that whether the information exists on or off the Internet is no more relevant than whether the information exists in a particular geographic location.

Plaintiff's motion for reconsideration does not challenge the Court's resolution of either of its legal questions. Instead, Plaintiff uses its motion for

reconsideration as an opportunity to raise an entirely new legal issue: "how to distinguish between material on the Internet that is in a 'library' … and material … on the Internet that … is not in a 'library.'" (Pl. Recon. Br. 6).  The Court's prior holding made clear that whether material is on the Internet is irrelevant to whether it is or is not in a library.  Therefore, Plaintiff's motion for reconsideration effectively asks the Court, for the first time, to "distinguish between material … that is in a 'library' … and material … that … is not in a 'library.'" (*Id.*).  No prior briefing raised a dispute over a standalone definition for the term "library."  The current request, too, is thus not a proper basis for reconsideration.  *Stone*, 80 F. Supp. 3d at 506.

### 3.    A Strict Scrutiny First Amendment Analysis Would Not Alter the Court's Decision

Separately, Plaintiff argues that the Court should have applied strict scrutiny in undertaking its First Amendment analysis.  (*See* Pl. Recon. Br. 7-13).  Such an argument appears to overlook the language of the January 2019 Opinion: "Plaintiff has not identified any aspect of the public domain exclusion that restricts expressive activity in any way.  Under *any standard of First Amendment scrutiny*, therefore, Plaintiff's challenge to the ITAR's public domain exclusion fails." *Stagg III*, 354 F. Supp. 3d at 470 (emphasis added).  However, the Court notes as well that the parties' prior summary judgment briefing regarding the level of First Amendment scrutiny was predicated on incorrect interpretations of the ITAR on both sides.[1]  The Court therefore appreciates

---

[1]      Plaintiff contends the Court "overlooked that the Government conceded that strict scrutiny applies here and similarly overlooked controlling Supreme Court precedent

Plaintiff bringing to its attention controlling authority that might affect the level of scrutiny that applies to the regulatory text, as it has now been properly construed by the Court, and so accepts Plaintiff's invitation to address the issue in greater detail.

Before doing so, the Court pauses to emphasize that Plaintiff's standing to mount a facial challenge to the ITAR is limited. Specifically, Plaintiff has standing to challenge those sections of the regulation that plausibly apply to the characteristics Plaintiff has disclosed about its intended speech: the republication, aggregation, and modification of information that is already in the public domain, including the dissemination of such information on the Internet. *See Stagg III*, 354 F. Supp. 3d at 450-56, 460-61. In this regard, the Court's prior Opinion held that "Plaintiff has standing to challenge the ITAR because … Plaintiff may be subject to prosecution for republishing [including to the Internet] technical data that was obtained from otherwise public domain sources, but that was not authorized by Defendants to be placed into the public domain." *Id.* at 460-61. The Court also recognized a second basis for

---

requiring such scrutiny because … [the ITAR] regulates speech based on its function and based on particular topics." (Pl. Recon. Br. 7). Plaintiff's argument as to the Government's concession is misplaced because, beyond the fact that the parties' mutual views on the law do not bind this Court, *see United States* v. *Ray*, 578 F.3d 184, 193 n.13 (2d Cir. 2009), Defendants' briefing addressed a mistaken reading of the ITAR. Defendants argued in their motion for summary judgment that the ITAR, as Defendants had previously interpreted it, satisfied strict scrutiny under *Reed* v. *Town of Gilbert*, 135 S. Ct. 2218 (2015). (*See* Dkt. #69 at 19 ("In examining the ITAR's licensing requirements, the Court should assess whether they 'further[] a compelling interest and [are] narrowly tailored to achieve that interest.'" (citing *Reed*, 135 S. Ct. at 2231)). Plaintiff's motion for reconsideration repeatedly miscites the sole reference to *Reed* and the strict scrutiny standard in Defendants' motion for summary judgment, and mistakenly directs the Court's attention to a page of Defendants' briefing that discusses procedural safeguards for classic prior restraints. (*See* Pl. Recon. Br. 2 & n.1, 8 (citing Dkt. #69 at 28)).

standing: Plaintiff's stated intention to "aggregate and modify public domain information." *See id.* at 455, 460.  Accordingly, Plaintiff's standing to mount a facial challenge to the ITAR is limited to those sections of the regulation that could plausibly be triggered by republishing technical data obtained from (but not authorized into) the public domain, including republication of such data to the Internet, or aggregating and modifying such data.

The January 2019 Opinion clarified as well that these characteristics of Plaintiff's intended speech do not, without more, trigger any licensing requirements under the ITAR.  *See Stagg III*, 354 F. Supp. 3d at 462-64. Instead, these characteristics, without more, trigger coverage under the ITAR's public domain exclusion.  *See id.* at 470-71.  Plaintiff's standing to mount a facial challenge in this action is thus limited to the ITAR's public domain exclusion, coupled with the application of the ITAR's "deemed export" provision to the dissemination of public domain information to the Internet.  *See id.* at 462 ("The Court will thus consider Plaintiff's facial challenge solely as it pertains to the current text of the ITAR's 'public domain' exclusion, and 'deemed export' provision.  *See* 22 C.F.R. §§ 120.11(a) and 120.17(a)(2).").

The Court's prior holdings denying Plaintiff's First Amendment challenges were properly limited to those narrow sections of the ITAR as to which Plaintiff had established standing to mount a facial challenge.  *See Stagg III*, 354 F. Supp. 3d at 470 ("Plaintiff has failed to identify any aspect *of the public domain exclusion* that operates as a prior restraint, and its arguments that the public domain exclusion fails the procedural requirements for

constitutional prior restraints are irrelevant." (emphasis added)); *see also id.* at 471 ("[I]nterpreting the current ITAR's definition of a 'deemed export' to include uploads to the Internet does not restrict the publication of *otherwise unregulated* information to the Internet, such as information that falls within the public domain exclusion[.]" (emphasis in original)).  However, the First Amendment analysis in the Court's January 2019 Opinion contained *dicta* about the ITAR's licensing requirements more generally, which the Court now acknowledges added ambiguity to the scope of its ruling.  *See id.* at 469-71 (discussing "the ITAR's licensing requirements" more generally, rather than narrowly addressing the public domain exemption or "deemed export" provision).  The Court takes this opportunity to eliminate that ambiguity and hereby limits its First Amendment analysis to (i) the ITAR's currently existing public domain exclusion, and (ii) the application of the ITAR's "deemed export" provision to the dissemination of public domain materials on the Internet.

The Court now turns to the level-of-scrutiny analysis.  In *Reed* v. *Town of Gilbert*, 135 S. Ct. 2218 (2015), the Supreme Court held that a municipal code that imposed different restrictions on outdoor signs depending on whether the signs conveyed ideological, political, or directional information was "content based on its face," and thus triggered strict scrutiny.  *Id.* at 2224-25, 2227. The Court explained that "Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed."  *Id.* at 2227.  "Some facial distinctions based on a message are obvious, defining regulated speech by particular subject matter,

and others are more subtle, defining regulated speech by its function or purpose." *Id.* The Court clarified that "a speech regulation targeted at specific subject matter is content based even if it does not discriminate among viewpoints within that subject matter." *Id.* at 2230. Even laws that are "facially content neutral, will be considered content-based regulations of speech" if they "cannot be justified without reference to the content of the regulated speech, or … were adopted by the government because of disagreement with the message the speech conveys." *Id.* at 2227 (internal citation, quotation marks, and alteration omitted).

Subsequent to *Reed*, 135 S. Ct. 2218, the Second Circuit rejected an argument that a regulation requiring non-profit organizations to disclose their donors triggered strict scrutiny. *See Citizens United* v. *Schneiderman*, 882 F.3d 374, 382-82 (2d Cir. 2018) ("[W]e see no reason to expand strict scrutiny in the way Appellants suggest."). While speech communicating the identity of donors to charitable organizations is arguably defined according to a particular topic or subject matter, the Second Circuit found that "[d]isclosure requirements are not inherently content-based," and applied "exacting, or 'intermediate,' scrutiny." *Id.* at 382.

Beyond this Circuit, a federal court in the Western District of Texas previously found that *Reed* did not compel a conclusion that the ITAR is facially content-based, instead following the Ninth Circuit's reasoning in *United States* v. *Mak*, 683 F.3d 1126 (9th Cir. 2012), to hold that the ITAR triggers intermediate scrutiny:

13

> The ITAR, on its face, clearly regulates disclosure of "technical data" relating to "defense articles." The ITAR thus unquestionably regulates speech concerning a specific topic. Plaintiffs suggest that is enough to render the regulation content-based, and thus invoke strict scrutiny. Plaintiffs' view, however, is contrary to law.… The ITAR does not regulate disclosure of technical data based on the message it is communicating.… Accordingly, the Court concludes the regulation is content-neutral and thus subject to intermediate scrutiny. *See United States* v. *Chi Mak*, 683 F.3d 1126, 1135 (9th Cir. 2012) (finding the AECA and its implementing regulations are content-neutral).

*See Defense Distributed* v. *U.S. Dep't of State*, 121 F. Supp. 3d 680, 694 (W.D. Tex. 2015). Thereafter, the Fifth Circuit affirmed the district court's denial of a preliminary injunction, but found that the ITAR is content-based and triggers strict scrutiny. *See Defense Distributed* v. *U.S. Dep't of State*, 838 F.3d 451, 468-70 (5th Cir. 2016). In so finding, the Fifth Circuit distinguished *Mak* on several bases, including that it was decided prior to *Reed,* 135 S. Ct. 2218. *See id.* at 469 & n.12.

Plaintiff's motion for reconsideration raises the issue of whether the Supreme Court's decision in *Reed* — coupled with, the Court hastens to add, the Second Circuit's decision in *Citizens United* — compel the conclusion that the ITAR is a facially content-based speech regulation that triggers strict scrutiny. (*See* Pl. Recon. Br. 8-9; Pl. Recon. Reply 3-5). Like the Western District of Texas court, this Court's January 2019 Opinion relied on *Mak* as persuasive authority in stating that "[t]he ITAR's restrictions on speech are content-neutral," and therefore trigger intermediate scrutiny. *See Stagg III*, 354 F. Supp. 3d at 469.

Neither the ITAR's public domain exception, nor its "deemed export" provision for public domain information, "applies to particular speech because of the topic discussed or the idea or message expressed." *Reed*, 135 S. Ct. at 2227.  Nor do either of these provisions "defin[e] regulated speech by particular subject matter … [or] by its function or purpose." *Id.*  To the contrary, the public domain exception defines regulated speech according to the *source* of information.  *See* 22 C.F.R. § 120.10(b) ("Public domain means information which is published and which is generally accessible or available to the public [from an enumerated source.]").  Plaintiff's own summary judgment brief aptly described the public domain exception as applicable to information that is "generally available to the public *through various public forums.*"  (Dkt. #63 at 5 (internal citations and quotation marks omitted) (emphasis added)).  And the "deemed export" provision defines regulated speech according to the *destination* of information.  *See* 22 C.F.R. § 120.17(a)(2) (defining a "deemed export" as "releasing or otherwise transferring technical data to a foreign person in the United States").  Thus, at least for these sections of the ITAR, it seems readily apparent that *Reed* does not alter the Court's prior reasoning.

Nonetheless, on reconsideration, the Court concludes that it need not determine which level of scrutiny applies because, as stated previously, under either strict or intermediate scrutiny, the outcome in this case is the same. *See Stagg III*, 354 F. Supp. 3d at 470 (observing that Plaintiff's challenge to the ITAR's public domain exclusion fails "under any standard of First Amendment scrutiny").  Strict scrutiny "requires the Government to prove that the

restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Reed*, 135 S. Ct. at 2231 (internal citation and quotation marks omitted). Here, Defendants have easily satisfied the burden to show a compelling interest for reasons previously articulated by the Second Circuit in this matter. *See Stagg II*, 673 F. App'x at 96 ("[A]bsent the inclusion of 'technical data' within ITAR's licensing structure, the statutory limits on arms transfers would be of negligible practical effect because they would leave unregulated the exportation of the technology, know-how, blueprints, and other design information sufficient for foreign powers to construct, produce, manufacture, maintain, and operate the very same equipment regulated in its physical form by the ITAR." (internal quotation marks and alterations omitted)); *see also id.* at 95-96 (observing that "the national security concerns raised by … the dissemination of such sensitive information are obvious and significant," and that the Government "has set forth specific concerns relating to the export of 'technical data' as defined in ITAR … which present the most compelling national interest").

The Court finds as well that the ITAR's public domain exception, and the application of the ITAR's "deemed export" provision to the dissemination of public domain information, are narrowly tailored. Under strict scrutiny analysis, speech regulations are narrowly tailored if they are "the least restrictive means to further the articulated interest[.]" *United States* v. *Playboy Entertainment Group, Inc.*, 529 U.S. 803, 813 (2000) (internal quotation marks and citation omitted). As properly construed by this Court, the public domain

exception, and the application of the "deemed export" provision to materials covered by that exemption, impose no restrictions on expression whatsoever. To the contrary, these portions of the ITAR *eliminate* any restrictions that might otherwise be triggered by the characteristics that Plaintiff has disclosed about its intended expression.  There can be no less restrictive means than no restriction at all.

In sum, because the portions of the ITAR which Plaintiff has standing to challenge satisfy both strict and intermediate scrutiny, the Court need not determine which level of scrutiny applies.

### 4.    Plaintiff Has Identified No Prior Restraint That It Has Standing to Challenge and to Which Either the Unbridled Discretion Doctrine or the *Freedman* Procedural Safeguards Apply

Plaintiff's final arguments for reconsideration, which concern the applicability of the unbridled discretion doctrine (*see* Pl. Recon. Br. 10-12; Pl. Recon. Reply 5-8), and the *Freedman* procedural safeguards (*see* Pl. Recon. Br. 12-13; Pl. Recon. Reply 8), also fail.  As detailed herein, Plaintiff does not identify any *ex ante* licensing provision in the ITAR that it has standing to challenge for which either doctrine applies.

As explained above, the FAC alleges that Plaintiff "seeks to disseminate materials ... that are in the public domain," including via the Internet, and "to aggregate and modify" those materials prior to dissemination.  *Stagg III*, 354 F. Supp. at 459, 461.  The FAC sought relief regarding a purported prior restraint on those expressive activities.  (FAC 13).  Plaintiff's motion for summary judgment then argued that, "[a]s a prior restraint, [the ITAR] requires the

safeguards of *Freedman* and *Lakewood*, which it fails to provide." (Dkt. #63 at 16). The Court held that no such prior restraint exists. *Stagg III*, 354 F. Supp. 3d at 462-64. More precisely, the Court held that the ITAR does not disqualify information from the public domain exclusion solely because the information entered the public domain without prior government authorization, or solely because the information has been aggregated or modified. *See id.*

Plaintiff has not moved for reconsideration of that holding. (*See* Pl. Recon. Br. 10-12). Nor does Plaintiff identify any other aspect of the ITAR's public domain exclusion, as the regulatory text has been construed by this Court, that imposes a prior restraint on Plaintiff's intended speech. (*See id.*). And since the application of the "deemed export" provision to materials covered by the public domain exemption imposes no restrictions on expression, Plaintiff has not identified how that provision could possibly restrain Plaintiff's intended speech.

Instead, Plaintiff argues in its reconsideration briefing that the Court must apply the unbridled discretion doctrine from *City of Lakewood* v. *Plain Dealer Pub. Co.*, 486 U.S. 750 (1988), to an unspecified "speech-licensing scheme[] … at issue here[.]" (Pl. Recon. Br. 10). *See Lakewood*, 486 U.S. at 764 (stating that the government may not condition speech "on obtaining a license or permit from a government official in that official's boundless discretion"). Tellingly, Plaintiff offers no details — nor any description at all — of the "speech-licensing scheme" that it asserts remains "at issue here." (*Id.*). On the basis of that vague statement, without more, Plaintiff concludes

18

that "the Court's decision allows a government official to deny a speech-license

for *any* reason and *without* the possibility of judicial review." (*Id.* at 10-11).

Plaintiff's motion identifies no portion of the ITAR's public domain exclusion,

no aspect of the "deemed export" provision as applied to public domain

materials, and no part of the Court's January 2019 Opinion, that purportedly

allows government officials to engage in such conduct. (*See id.* at 10-12).

Indeed, as the Opinion made clear, the portions of the ITAR that Plaintiff had

standing to challenge *exempt* the characteristics that Plaintiff has disclosed

about its intended speech from any ITAR licensing requirement, and thus from

any requirement of permission from any government official. The ITAR's public

domain exclusion does not "condition" speech with the characteristics that

Plaintiff has disclosed "on obtaining a license or permit" at all, much less a

license subject to a government "official's boundless discretion." *Lakewood*,

486 U.S. at 764.

Plaintiff's arguments concerning the procedural safeguards required by

*Freedman* v. *Maryland*, 380 U.S. 51 (1965), miss the mark for similar reasons.

(*See* Pl. Recon. Br. 12-13). In *Freedman*, the Supreme Court held that certain

procedural safeguards are required to render a classic prior restraint on speech

constitutionally valid. *See* 380 U.S. at 739 (observing that a classic prior

restraint "avoids constitutional infirmity only if it takes place under procedural

safeguards designed to obviate the dangers of a censorship system"); *see also*

*FW/PBS, Inc.* v. *City of Dallas*, 493 U.S. 215, 227 (1990) (clarifying that

*Freedman* requires that a constitutional prior restraint "[i] can be imposed only

for a specified brief period during which the status quo must be maintained; [ii] expeditious judicial review of that decision must be available; and [iii] the censor must bear the burden of going to court to suppress the speech and ... the burden of proof"). This Court's January 2019 Opinion found that the purported prior restraints that were the subject of the FAC do not exist. Plaintiff has failed to identify any portion of the ITAR which Plaintiff has standing to challenge, and which — as construed by this Court — requires the *Freedman* procedural safeguards.

Plaintiff incorrectly asserts that the Court has identified ITAR-imposed speech-licensing requirements for: (i) "republication (in any medium) of certain, currently unspecified, information obtained from the Internet," and (ii) "the original publication (in any medium) of new technical data, including the aggregation or modification of public domain materials that results in a certain, but again currently unspecified, level of 'characteristics.'" (Pl. Recon. Br. 12). As to Plaintiff's first point, the Court held that whether information exists on or off the Internet does not determine whether the information is available from a "librar[y] open to the public" for purposes of the ITAR's public domain exclusion. *See Stagg III*, 354 F. Supp. 3d at 466-68. As stated above, that holding resolved the legal questions raised in Plaintiff's summary judgment briefing as to whether (i) the Internet is equivalent to a public library for purposes of the ITAR and (ii) the public domain exclusion does not include the Internet, both in the negative. Accordingly, information obtained from the Internet falls within the public domain exclusion as long as it "is published

and ... generally accessible or available to the public" through one or more of the sources listed in 22 C.F.R. § 120.11(a).  If Plaintiff wishes now to claim that one or more of these enumerated sources, including "libraries open to the public," must be further specified, it is free to commence a new action. However, no such claim was raised or briefed in this matter, and thus the claim is inappropriate on a motion for reconsideration.  *See Stone*, 80 F. Supp. 3d at 506.

As to Plaintiff's second point, the Court's January 2019 Opinion specified that mere "aggregation or modification" of public domain materials does not, without more, remove those materials from the public domain.  *See Stagg III*, 354 F. Supp. 3d at 464.  The Court did not identify any portion of the ITAR that imposes a speech-licensing requirement based on unspecified characteristics.  Rather, the Court specified that "aggregation or modification" are not such characteristics.  *See id.* at 464 & n.9.  Despite Plaintiff's asseverations otherwise, the Court's finding that certain characteristics — aggregation and modification — do *not* trigger a licensing requirement is not equivalent to a finding that there are unspecified characteristics that *do* trigger a licensing requirement.  And Plaintiff has named no portion of the ITAR that imposes a licensing requirement based on an "unspecified, level of 'characteristics.'"  (Pl. Recon. Br. 12).  If Plaintiff identifies one at some later date, it is free to commence a new action challenging that section.  Plaintiff may not, however, do so on a motion for reconsideration.  *See Stone*, 80 F. Supp. 3d at 506.

### 5.    Plaintiff Lacks Standing to Challenge Sections of the ITAR Regulating Speech That Does Trigger the Licensing Requirement

Plaintiff's motion for reconsideration suggests that the Court's January 2019 Opinion should have gone beyond finding that republication, aggregation, and/or modification of information already in the public domain do not, without more, trigger an ITAR licensing requirement.  Specifically, Plaintiff contends that the Court should have examined limits on "the discretion the Government exercises when a license *is* required."  (Pl. Recon. Reply 7 (emphasis added)).  Plaintiff argues that, when a license is required, the sole limit on a license denial is that it be "otherwise advisable[.]"  (*Id.*).  The Court declines Plaintiff's invitation to so extend its prior holding.

*First* and foremost, Plaintiff has not established standing to mount a facial challenge to portions of the ITAR regulating speech that does trigger the licensing requirement, because the characteristics that Plaintiff has disclosed about the speech it seeks to engage in — disseminating, aggregating, and modifying information already in the public domain, including republication of that information to the Internet — do not.  While Plaintiff need not actually apply for, or be denied, a license to establish standing for a facial First Amendment challenge to a licensing statute, *see Stagg I*, 158 F. Supp. 3d at 209, it "must allege an injury 'fairly traceable' to" the licensing requirement, *see Stagg III*, 354 F. Supp. 3d at 457 (quoting *Pritsker* v. *McKee*, 692 F. App'x 662, 663 (2d Cir. 2017) (summary order) (internal quotation omitted)).  In the context of a First Amendment claim, allegations of a "subjective 'chill' are not

an adequate substitute for a claim of specific objective harm or a threat of specific future harm." *Clapper* v. *Amnesty Int'l USA*, 568 U.S. 398, 418 (2013) (internal quotation omitted).

The January 2019 Opinion held that the characteristics Plaintiff has disclosed about its intended expressive activities do not trigger any ITAR licensing requirement. *See Stagg III*, 354 F. Supp. 3d at 470. In consequence, Plaintiff lacks standing to challenge sections of the ITAR regulating speech that does trigger such a licensing requirement, including the grant or denial of a license for such speech.[2] Plaintiff acknowledged as much itself in its summary judgment briefing. (*See* Dkt. #63 at 2 (observing that information is "excluded under the public domain provision from the ITAR's licensing scheme because that information [i]s no longer considered technical data")).

Plaintiff's motion for reconsideration has neither contested the Court's determination of standing, nor rectified the flaws in its previous bid to challenge sections of the ITAR from which it has shown no "fairly traceable" injury. *See Pritsker*, 692 F. App'x at 663. Plaintiff contends that "the Government's unreviewable licensing discretion has caused it to censor its own

---

[2]    These arguments largely restate claims previously raised in Plaintiff's summary judgment briefing. There, Plaintiff argued that the ITAR's pre-publication licensing scheme affords unfettered discretion because 22 C.F.R. § 128.1 states that the grant of an ITAR license is "highly discretionary"; because 22 C.F.R. § 126.7(a)(1) authorizes the denial of a license for either an enumerated reason or if denial "is otherwise advisable"; and because the ITAR lacks a provision for judicial review of a license denial. (Dkt. #63 at 13-16). Plaintiff argued as well that the ITAR's lack of a "strict requirement to make a determination within any time frame" as to the grant or denial of a license is itself a form of unconstitutional unbridled discretion. (*Id.* at 14). The Court's prior Opinion did not address these because, as explained in detail in the main text, they were beyond the scope of the standing that Plaintiff had established. *See Stagg III*, 354 F. Supp. 3d at 460-61.

speech … [a]nd the mere existence of the Government's unbridled (and unreviewable) discretion here will continue to censor the Plaintiff's speech[.]" (Pl. Recon. Br. 11).  This assertion falls short of showing that Plaintiff's intended speech is in any manner subject to the portions of the ITAR regulating speech that does trigger the licensing requirement, including the grant or denial of such licenses.  *See, e.g.*, *Clapper*, 568 U.S. at 402 (finding that plaintiffs "cannot manufacture standing by choosing to [engage in conduct] based on hypothetical future harm that is not certainly impending").

*Second* and finally, the Court observes that Plaintiff's arguments as to the ITAR's licensing requirement rely on *Bernstein* v. *United States Department of State*, 945 F. Supp. 1279 (N.D. Cal. 1996) ("*Bernstein II*").[3]  (*See* Dkt. #63 at 1, 5, 9, 11, 13, 14, 15, 17, 18, 20, 21, 24, 25; Pl. Recon. Reply 5).  Significantly, however, Plaintiff mischaracterizes the holding in *Bernstein II* by suggesting that it invalidated the ITAR on the grounds Plaintiff advances here. (*See* Pl. Recon. Reply 5).  It did not.  In *Bernstein II*, Judge Marilyn Hall Patel of the Northern District of California considered "[t]he ITAR licensing scheme for items listed in Category XIII(B) of the USML," which category restricted the export of cryptographic devices and software.  *Bernstein II*, 945 F. Supp. at 1290; *see also* 22 C.F.R. § 121.1.  *Bernstein II* held that "the ITAR licensing system as applied to Category XIII(B) act[ed] as an unconstitutional prior

---

[3]     The first decision in the protracted *Bernstein* litigation concerned whether the First Amendment applied to source code, and whether the plaintiff had stated a colorable constitutional claim.  *See Bernstein* v. *U.S. Dep't of State*, 922 F. Supp. 1426 (N.D. Cal. 1996) ("*Bernstein I*").

restraint" because it failed to provide the required *Freedman* safeguards.  *Id.* at 1290.  However, regarding the technical data provision of the ITAR — the provision at issue here — the *Bernstein II* court recognized that the Ninth Circuit had previously ruled in *United States* v. *Edler Industries, Inc.*, 579 F.2d 516 (9th Cir. 1978), that a predecessor to the ITAR's technical data provision was neither overbroad nor a prior restraint on speech.  *See id.* at 1291; *see also United States* v. *Posey*, 864 F.2d 1487, 1496-97 (9th Cir. 1989) (affirming *Edler* and extending it to the updated version of the ITAR).

The portion of *Bernstein II* that declined to find a prior restraint in the technical data provision of the ITAR, *see Bernstein II*, 945 F. Supp. at 1291, was never appealed.  In a subsequent opinion in the same action, the district court repeated its reasoning as to Category XIII(B) of the ITAR, and it was that reasoning that was appealed without resolution by the Ninth Circuit.  *See Bernstein* v. *U.S. Dep't of State*, 192 F.3d 1308 (9th Cir. 1999) ("*Bernstein IV*") (ordering rehearing en banc and withdrawing three-judge panel opinion).[4]  Nor did the Ninth Circuit take up the district court's invitation to reconsider its holding in *Edler*, *see Bernstein II*, 951 F. Supp. at 1292, or, for that matter, in *Posey*.

---

[4]  Instead, after the governing regulations for the export of nonmilitary cryptography shifted from the ITAR to the Export Administration Regulations, 15 C.F.R. §§ 730-774 (the "EAR"), Judge Patel held that the EAR's encryption regulations were also an unconstitutional prior restraint because they too failed to provide the required *Freedman* procedural safeguards.  *Bernstein* v. *U.S. Dep't of State*, 974 F. Supp. 1288, 1291-92, 1308 (N.D. Cal. 1997) ("*Bernstein III*").  *Bernstein III* was appealed and initially affirmed by a three-judge panel; the which affirmance was then withdrawn by the Ninth Circuit for a rehearing en banc that ultimately did not happen.  *See Bernstein* v. *U.S. Dep't of State*, 176 F.3d 1132 (9th Cir. 1999), withdrawn by *Bernstein* v. *U.S. Dep't of State*, 192 F.3d 1308 (9th Cir. 1999) ("*Bernstein IV*").

In 2003, Judge Patel considered the *Bernstein* plaintiff's second supplemental complaint, which again brought facial and as-applied challenges arguing that certain revised regulations on the export of encryption products "constitute prior restraint because they require a license to engage in protected expression," including sharing regulated "encryption code with foreign persons at a conference in the United States" or posting regulated encryption software to the Internet.  *Bernstein* v. *U.S. Dep't of State*, No. C 95-0582 (MHP) (N.D. Cal. Jul. 28, 2003) ("*Bernstein V*").  Judge Patel ruled that the plaintiff lacked standing because he had "not set forth any facts showing a specific threat of enforcement."  *Id.* (quoting *Virginia* v. *Am. Booksellers Ass'n*, 484 U.S. 383, 393 (1988) (concluding that to establish standing, a plaintiff must show "an actual and well-founded fear that the law will be enforced against him")).  In Judge Patel's words, the action had "devolved into the world of hypotheticals, and … [was] a case in search of a controversy."  *Id.* (internal citation and quotation marks omitted).

Plaintiff here regurgitates many arguments raised by the *Bernstein* plaintiff.  And, as with the *Bernstein* filings, Plaintiff's claim concerning sections of the ITAR regulating speech that does trigger the licensing requirement, including sections governing the grant or denial of such a license, has "devolved into the world of hypotheticals, and … is a case in search of a controversy."  *Bernstein V*, No. C 95-0582 (MHP).  It cannot support reconsideration here.

**CONCLUSION**

For the reasons above, Plaintiff's motion for reconsideration is DENIED.

The Clerk of Court is directed to terminate the motion at docket entry 91.

SO ORDERED.

Dated:      April 25, 2019
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge